UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS C. CASCIO,

                    Plaintiff,

v.                                                                8:09-CV-1128
                                                                  (GTS/DRH)
ROBERT J. FERGUSON,

                    Defendant and Cross-Claimant,

v.

MAREVA NETTLES; Individually and
as Administrator of the Estate of David C. Nettles;
and THE ESTATE OF DAVID C. NETTLES,

                    Cross-Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

LAW OFFICE OF WAYNE P.  SMITH                         WAYNE P. SMITH, ESQ.
   Counsel for Plaintiff
157 Barrett Street
Schenectady, NY 12305

THUILLEZ, FORD, GOLD, BUTLER & YOUNG, LLP            DONALD P. FORD, JR., ESQ.
   Counsel for Defendant / Cross-Claimant
20 Corporate Woods Boulevard, 6th Floor
Albany, NY 12211-1715

FLINK SMITH, LLC                                      JAY A. SMITH, ESQ.
   Counsel for Cross-Defendants                       EDWARD FLINK, ESQ.
23 British American Boulevard
Latham, NY 12110

GLENN T. SUDDABY, United States District Judge

**<u>DECISION and ORDER</u>**

Currently before the Court, in this personal injury action filed by Thomas C. Cascio

("Plaintiff"), are the following two motions: (1) a motion for summary judgment filed by

Robert J. Ferguson ("Ferguson") (Dkt. No. 54) against Plaintiff; and (2) a motion for summary

judgment filed by Mareva Nettles and the Estate of David C. Nettles ("the Nettleses") against

Ferguson with regard to his cross-claim against them (Dkt. No. 56). For the reasons set forth

below, both motions are granted; the motions are denied as moot to the extent they request other

relief, which has already been provided by the Court's Decision and Order of August 30, 2011;[1]

and this action is dismissed in its entirety.

---

[1]     Originally, Plaintiff's Complaint included claims against not only Ferguson but
also against the Nettleses. (Dkt. No. 1.) Moreover, in their Answer to Plaintiff's Complaint, the
Nettleses filed a cross-claim against Ferguson, requesting indemnification and/or contribution
from him in the event that they were found liable in any degree to Plaintiff. (Dkt. No. 8, at ¶¶
17-19.) As a result, in their motion for summary judgment, the Nettleses requested summary
judgment against not only Ferguson but also against Plaintiff. (Dkt. No. 56.) Similarly, in his
motion for summary judgment, Ferguson requested summary judgment against not only Plaintiff
but also against the Nettleses. (Dkt. No. 54.) However, after the parties' filed their motions, the
Court issued a Decision and Order dismissing Plaintiff's claims against the Nettleses. (Dkt. No.
65.) As a result, the Nettleses' motion was rendered moot to the extent it requested summary
judgment against Plaintiff, as was correctly recognized by the Nettleses in their reply
memorandum of law. (Dkt. No. 68.) Similarly, Ferguson's motion was rendered moot to the
extent that it requested summary judgment against the Nettleses on their cross-claim against him
(because that cross-claim was contingent on a finding of liability to Plaintiff on the part of the
Nettleses). <u>For these reasons, the Court denies as moot that portion of the Nettleses' motion that
requests summary judgment against Plaintiff. Similarly, the Court denies as moot that portion of
the Ferguson's motion that requests summary judgment against the Nettleses on their cross-claim
against him.</u>

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint Against Ferguson, and Ferguson's Cross-Claim Against the Nettleses

Generally, liberally construed, Plaintiff's Complaint alleges that, on October 10, 2006, at approximately 7:51 a.m. in the Town of Keene, New York, David C. Nettles and Robert J. Ferguson recklessly operated their motor vehicles, which resulted in a "violent collision" between Nettles' motor vehicle and the motor vehicle operated by Plaintiff, causing Plaintiff to sustain serious and permanent bodily injuries, as defined by N.Y. INS. LAW § 5102, as well as property damage to his vehicle. (Dkt. No. 1.) More specifically, Plaintiff's Complaint alleges that, as Plaintiff's vehicle was properly overtaking Ferguson's vehicle from the passing lane, Ferguson caused Plaintiff's vehicle to collide with Nettles' vehicle, by "fail[ing] to yield and give Plaintiff a last clear chance to move to the right in order [for Plaintiff] to move his auto from the passing lane at a time when . . . Nettles was approaching from the opposite direction in the . . . passing lane." (*Id*. at ¶ 15.) Based on these factual allegations, Plaintiff's Complaint asserts the following two claims against Ferguson: (1) a claim of negligence; and (2) a claim of property damage. (*See generally id*.) Familiarity with the remaining factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id*.)

Generally, in his Answer, Ferguson asserts a cross-claim of negligence against the Nettleses. (Dkt. No. 36, at ¶¶ 25-26; *see also* Dkt. No. 56, Attach. 4 [Ex. A3 to Cross-Defs.' Motion].)[2] As relief with regard to its cross-claim, Ferguson requests indemnification and/or

---

[2] As was indicated above in note 1 of this Decision and Order, originally, the Nettleses were the co-Defendants of Ferguson. (Dkt. No. 1.)

contribution from the Nettleses, in the event that Ferguson is found liable in any degree to Plaintiff.  (*Id.*)

**B.     Parties' Briefing on Current Motions**

**1.     Fergsuon's Motion for Summary Judgment Against Plaintiff**

Generally, in support of his motion for summary judgment, Ferguson argues that he is not liable to Plaintiff for negligence as a matter of law because, based on the current record, the following four material facts are undisputed: (1) on the day in question, there were, affixed to Ferguson's vehicle, large towing mirrors to aid Ferguson in observing rear traffic; (2) immediately before the accident in question, as he was passed by non-party Walter Jakubowski's vehicle, Ferguson maintained a constant rate of speed under the posted speed limit, moved his vehicle to the right edge of his lane, and continued to provide as much passing room as possible following Jakubowski's pass; (3) a moment later, when Plaintiff attempted to pass Ferguson's vehicle, Ferguson maintained a constant rate of speed under the posted speed limit, and kept his vehicle to the right; (4) even if a genuine dispute of material fact exists as to whether Ferguson's vehicle was positioned at the right edge of his lane during Plaintiff's attempted pass, the collision between Plaintiff and Nettles occurred *behind* Ferguson's vehicle, not as Plaintiff was passing Ferguson (rendering it impossible for any failure by Ferguson to move his vehicle to the right to have been a proximate cause of the collision).  (*See generally* Dkt. No. 54, Attach. 23 [Def.'s Memo. of Law].)

Generally, in response to Ferguson's motion for summary judgment, Plaintiff argues that, based on the current record, a genuine dispute exists as to whether Ferguson was negligent, for the following four reasons: (1) the fact that Ferguson had large towing mirrors affixed to his

vehicle is immaterial given that he admits that he never saw Plaintiff's vehicle until it pulled out from behind his vehicle and attempted to pass his vehicle; (2) the fact that Ferguson was traveling under the posted speed limit is immaterial given the evidence that Ferguson failed to apply his brakes in order to give both Jakubowski's vehicle and Plaintiff's vehicle needed time and space to pass and exit the passing lane; (3) even if it were true that Ferguson had positioned his vehicle at the right edge of his lane during Plaintiff's attempted pass, that fact would not absolve him of liability, given that the accident could have been avoided if Ferguson had (a) kept a better lookout for Plaintiff, (b) moved his vehicle even further to right, onto the shoulder of the road, (c) applied his brakes and/or (d) sounded his horn; and (4) contrary to Ferguson's assertion that the collision between Plaintiff and Nettles occurred "behind" Ferguson's vehicle, admissible record evidence (e.g., the NYSP Accident Reconstruction Report) exists that the accident occurred not in the lane in which Ferguson was traveling (i.e., the eastbound lane) but in the lane in which Nettles was traveling (i.e., the northernmost westbound lane), as Plaintiff was attempting to pass Ferguson. (*See generally* Dkt. No. 60, Attach. 1 [Plf.'s Opp'n Memo. of Law].)

Generally, in his reply, Ferguson asserts the following three arguments: (1) Plaintiff's argument that Ferguson did not apply his vehicle's brakes while going downhill is supported by mere speculation (specifically, Ferguson's deposition testimony stating that was uncertain as to whether or not be applied his vehicle's brakes while proceeding downhill) and, in any event, is immaterial given that it is undisputed that Ferguson was traveling under the posted speed limit (and thus had no duty to slow down); (2) Plaintiff's argument that Ferguson is liable due to his failure to pull even further to the right (onto the shoulder of the road) is unavailing, given the

uncontroverted evidence that Ferguson had moved his vehicle as far to the right as the road would safely accommodate and, in any event, that the accident occurred behind Ferguson's vehicle; and (3) Plaintiff's reliance on the fact that the accident occurred in the northernmost westbound lane is also unavailing, given that Plaintiff fails to dispute the fact the front of Plaintiff's vehicle had not yet become parallel to the rear of Ferguson's vehicle at the time of the collision (leaving Plaintiff time to pull back into the eastbound lane, regardless of how far to the right Ferguson's vehicle had been positioned).  (*See generally* Dkt. No. 66, Attach. 1 [Def.'s Reply Memo. of Law].)

### 2. The Nettleses' Motion for Summary Judgment Against Ferguson

Liberally construed, the Nettleses' motion for summary judgment argues that Ferguson's cross-claim against them for negligence must be dismissed because (1) that cross-claim "presupposes some liability on the part of Mr. Nettles" and (2) based on the current record, no evidence of any such liability exists.  (*See generally* Dkt. No. 56, Attach. 14, at 15-16 [attaching pages "10" and "11" of Cross-Defs.' Memo. of Law].)

Ferguson filed no response to the Nettleses' motion for summary judgment against him. (*See generally* Docket Sheet.)

Generally, in their reply, the Nettleses argue as follows: (1) Ferguson has not opposed the Nettleses' motion for summary judgment against him; and (2) for the reasons stated in the Nettleses' memorandum of law in chief, Mr. Nettles did not proximately cause the accident in question and thus the Nettleses cannot be liable to Ferguson for contribution or indemnification. (*See generally* Dkt. No. 68, at 2-3 [attaching pages "1" and "2" of Cross-Defs.' Reply Memo. of Law].)

## C.     Undisputed Material Facts

Generally, the following material facts have been asserted and supported by movants in their Local Rule 7.1 Statement of Undisputed Material Facts, and either admitted or denied without a supporting record citation by non-movants in their Local Rule 7.1 Response.[3]

On the morning of October 10, 2006, Plaintiff left Jay, New York (in the vicinity of Lake Placid), and proceeded home in an easterly direction on Route 73, driving a 2003 Chevrolet Cavalier. Ahead of Plaintiff, Robert Ferguson, with Malcolm Ferguson as a passenger, proceeded home in an easterly direction from Fish Creek (also in the Lake Placid area). Ferguson drove a 2002 Dodge Ram 1500 pickup truck and towed a thirty-five foot camping trailer, which was equipped with separate brake lights. Co-defendant David Nettles proceeded in a westbound direction on Route 73, driving a 2004 Chevrolet.

Although the record is unclear with regard to the exact speed at which Ferguson was traveling during the time in question, the parties agree that Ferguson was driving between approximately 40 and 55 miles per hour–but no more than 55 miles per hour–in a zone with a 55-mile-per-hour speed limit.[4]

---

[3]      (*Compare* Dkt. No. 54, Attach. 2 [Ferguson's Rule 7.1 Statement] *with* Dkt. No. 58 [Nettles' Rule 7.1 Response] *and* Dkt. No. 60, Attach. 2 [Plf.'s Rule 7.1 Response and Statement of Additional Material Facts in Dispute] *and* Dkt. No. 66, Attach. 2 [Ferguson's Rule 7.1 Response to Plf.'s Statement of Additional Material Facts in Dispute]; *compare* Dkt. No. 56, Attach. 13 [Nettles' Rule 7.1 Statement] *with* Dkt. No. 62 [Plf.'s Rule 7.1 Response].)

[4]      (*See* Dkt. No. 60, Attach. 2, at ¶ 27 [Plf.'s Rule 7.1 Response, citing record evidence that does not actually controvert the fact stated above, but merely indicates speculation on the part of Mr. Jakubowski that he himself–not Ferguson–could have been going 70 miles per hour when he passed Ferguson].)

The portion of Route 73 on which the collision occurred consisted of a single lane designated for traffic proceeding eastbound (which was downhill), and two lanes designated for traffic proceeding westbound (which was uphill). The left (or inside or southernmost) westbound lane was designated as a legal passing zone for the single eastbound lane. At the beginning of the legal passing zone, there existed a sign warning to "Pass With Caution" (or a near-equivalent warning).[5]

Upon noticing the legal passing zone, Ferguson moved to the right side of the eastbound lane, in order to afford passing vehicles additional room.[6] While there was a shoulder to the right (or south) of the portion of the eastbound lane in question, Ferguson did not perceive it to be wide enough to accommodate his vehicle.[7] As a result, he probably did not go onto the

---

[5] The Court notes that the south side of the portion in question of Route 73 appears to be lined with trees. (Dkt. No. 54, Attach. 16, at 2-3 [attaching photographs of accident scene]; Dkt. No. 54, Attach. 15, at 4-7 [attaching pages "1" through "4" of NYSP Accident Reconstruction Report, showing photographs of accident scene].)

[6] (*See* Dkt. No. 60, Attach. 2, at ¶ 25 [Plf.'s Rule 7.1 Response, citing record evidence that does not actually controvert the fact stated above, but merely indicates that Mr. Jakubowski did not recall whether Ferguson "pulled to the right," and that he recalled that there was a shoulder on that portion of Route 73].)

[7] (*See* Dkt. No. 54, Attach. 11, at 5, 19 [citing pages "33"and "47" of Ferguson Depo. Tr., stating, "I believe I said in my statement [to the police] I . . . moved slightly. If you look [at the photograph], there is not much of a shoulder on the eastbound lane . . . [T]here is not enough room to slide over with. I yielded as much as I could in order to assist the passing. . . . If I remember correctly, [I shimmied over] as I noticed the passing lane. I probably didn't go over the white line because I didn't want to take the truck off road, so I probably just moved over as much as I could allow for oncoming traffic to see around the vehicle. . . . "]; Dkt. No. 54, Attach. 17, at 2 [Ferguson's Sworn Statement to NYS Police, stating, "I pulled slightly over to give [Mr. Jakubowski] room"]; Dkt. No. 54, Attach. 16, at 2-3 [attaching photographs of accident scene using during depositions, showing, inter alia, shoulder of southernmost edge of Route 73 in proximity of collision]; Dkt. No. 54, Attach. 13, at 22-23 [citing pages "21" and "22" of Jakubowski Depo. Tr., stating only that Jakubowski recalled there was a shoulder but that he did not recall whether it was wide enough for a truck pulling a camp to pull onto].)

shoulder.[8]

Upon reaching the legal passing zone, a vehicle operated by non-party Walter Jakubowski successfully passed Ferguson. During Jakubowski's pass, Ferguson maintained a constant rate of speed. In addition, during Jakubowski's pass, Ferguson continued to operate his vehicle on the right-most edge of the eastbound lane.[9] Following Jakubowski's pass, Ferguson continued to operate his vehicle on the right-most edge of the eastbound lane.[10]

As Jakubowski returned to the eastbound lane, Ferguson observed Nettles approaching in the left (or inside or southernmost) westbound lane. There were no vehicles located to the right of the Nettles vehicle that would have prevented him from moving into the right (or outside or northernmost) westbound lane. After Jakubowski's pass, Ferguson immediately checked his left-hand rearview mirror because he assumed that more vehicles would pass him; at that time, the front of the oncoming Nettles' vehicle (in the inside westbound lane) was nearly parallel to the front of Ferguson's vehicle.[11] As Ferguson checked his rearview mirror, he observed

---

[8]     *See, supra,* note 7 of this Decision and Order.

[9]     (*See* Dkt. No. 60, Attach. 2, at ¶ 34 [Plf.'s Rule 7.1 Response, citing record evidence that does not actually controvert the fact stated above, but merely indicates that Mr. Jakubowski did not recall whether Ferguson "pulled to the right," and that he recalled that there was a shoulder on that portion of Route 73]; Dkt. No. 60, Attach. 2, at ¶ 36 [admitting that Ferguson provided additional room for Mr. Jakubowski to pass].)

[10]    (*See* Dkt. No. 60, Attach. 2, at ¶ 35 [Plf.'s Rule 7.1 Response, citing record evidence that does not actually controvert the fact stated above, but merely indicates that Mr. Jakubowski did not recall whether Ferguson "pulled to the right," and that he recalled that there was a shoulder on that portion of Route 73].)

[11]    (*See* Dkt. No. 60, Attach. 2, at ¶ 42 [Plf.'s Rule 7.1 Response, citing generally to an identified portion of a nine-page document that, in any event, does not actually controvert the fact stated above but that, at page 4 states that, "[a]t about the same time" that Nettles' vehicle "approached [Ferguson's] vehicle," Plaintiff "had steered his vehicle into the left or center westbound lane to pass [Ferguson's vehicle]"].)

Plaintiff enter the passing lane, a moment before the collision.[12]

During the moment before the collision,[13] Plaintiff and Nettles both attempted evasive action, abruptly braking and steering into the right (or outside or northernmost) westbound lane.

As Ferguson was looking in his rearview mirror, he witnessed the head-on collision between Nettles' and Plaintiff's vehicles. Ferguson was not involved in the collision. The accident occurred *behind* Ferguson's vehicle.[14] At no point did Plaintiff attempt to overtake Ferguson's vehicle.[15]

After witnessing the collision in his rearview mirror, Ferguson pulled off the road in order to offer assistance. Nettles sustained fatal injuries. Plaintiff sustained serious injuries. The State Police conducted an investigation as to the cause of the accident and prepared an

---

[12]    (*See* Dkt. No. 54, Attach. 10, at 25-29 [attaching pages "24" through "28" of Ferguson's Depo. Tr.]; Dkt. No. 54, Attach. 10, at 6-7 [attaching pages "34" and "35" of Ferguson's Depo. Tr.]; Dkt. No. 54, Attach. 17, at 2-3 [Ferguson's Sworn Statement to NYS Police].)

[13]    It appears that the "moment" before the collision was approximately two seconds before the collision. This is because the data contained within the Sensing and Diagnostics Module retrieved from Plaintiff's vehicle reveals as follows: five seconds before the collision, Plaintiff was traveling 80 miles per hour; four seconds before the collision, Plaintiff was traveling 82 miles per hour; three seconds before the collision, Plaintiff was still traveling 82 miles per hour; at that instant, Plaintiff applied the brakes; two seconds before the collision, Plaintiff was traveling 74 miles per hour; one second before impact, Plaintiff was traveling 59 miles per hour. (Dkt. No. 54, Attach. 15, at 10 [attaching page "7" of NYSP Accident Reconstruction Report].)

[14]    (Dkt. No. 60, Attach. 2, at ¶ 46 [Plf.'s Rule 7.1 Response, admitting fact in question].)

[15]    (*See* Dkt. No. 60, Attach. 2, at ¶ 43 [Plf.'s Rule 7.1 Response, not specifically denying this fact or citing record evidence controverting it]; *see also* Dkt. No. 54, Attach. 10, at 25-28 [attaching pages "24" through "27" of Ferguson's Depo. Tr., establishing fact]; Dkt. No. 54, Attach. 10, at 6-7 [attaching pages "34" and "35" of Ferguson's Depo. Tr., establishing fact].)

accident reconstruction report. The report states in part, "[t]he primary cause of this collision is an unsafe passing maneuver on the part of . . . Thomas C. Cascio."

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B.    Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties. (*See generally* Dkt. No. 54, Attach. 23 [Def.'s Memo. of Law]; Dkt. No. 60, Attach. 1 [Plf.'s Opp'n Memo. of Law]; Dkt. No. 66 , Attach. 1 [Def.'s Reply Memo. of Law]; Dkt. No. 56, Attach. 14 [Cross-Defs.' Memo. of Law]; Dkt. No. 68 [Cross-Defs.' Reply Memo. of Law].)

# III. ANALYSIS

### A. Whether Plaintiff's Claims Against Ferguson Should Be Dismissed Because, Based on the Current Record, No Genuine Dispute of Material Fact Exists that Ferguson Did Not Breach a Duty to Plaintiff

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Ferguson's memoranda of law. (Dkt. No. 54, Attach. 23 [Def.'s Memo. of Law]; Dkt. No. 66, Attach. 1 [Def.'s Reply Memo. of Law]; *see, also,* Part I.B.1. of this Decision and Order.) The Court would add only the following analysis regarding four of Plaintiff's chief arguments.

Plaintiff's first argument is that Ferguson reasonably should have seen Plaintiff sooner. The duty referenced by Plaintiff is the duty of Ferguson to keep a proper lookout–under the circumstances existing at the time–to see and be aware of what was in his view.[16] Here, the record is absent of any evidence that Plaintiff sounded his horn before attempting to pass Ferguson.[17] Furthermore, it is uncontroverted that, before Plaintiff attempted his pass of Ferguson, Ferguson was focused on Jakubowski's passing vehicle ahead of him.[18] Immediately

---

[16]     *See Luizzi v. Pro Transport Inc.*, 02-CV-5388, 2009 WL 252076, at *8 (E.D.N.Y. Feb. 2, 2009) (explaining that all drivers are under a duty "(1) to maintain a reasonably safe rate of speed, (2) to have their automobiles under reasonable control, (3) to keep a proper lookout, *under the circumstances then existing*, to see and be aware of what was in their view, and (4) to use reasonable care to avoid an accident.") [emphasis added].

[17]     *See* N.Y. VEH. & TRAF. LAW § 1122 (McKinney 2012) ("The driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle *on audible signal* and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.") [emphasis added]; *Van Loo v. Tompkins Cnty.*, 321 N.Y.S.2d 15, 16 (N.Y. App. Div., 3d Dept. 1971) ("[U]nder certain circumstances a motorist may be required to sound a horn in overtaking a vehicle, [for example where] the need for such a warning could be reasonably foreseen.").

[18]     (Dkt. No. 54, Attach. 10, at 26 [attaching page "25" of Ferguson Depo. Tr., stating that Ferguson responded "No" to the question, "When you were looking forward watching the RAV4 pull in front of you and you still had your eyes on the black vehicle we now know to be the Nettles vehicle, did you have an opportunity at any moment during that time while you were watching that develop to look into your left-hand rearview mirror?"].)

after Jakubowski's pass was complete, Ferguson checked his rearview mirror and saw Plaintiff enter the passing lane. Based on this record, the Court is unable to find that a rational factfinder could conclude that Ferguson reasonably should have seen Plaintiff sooner.

Plaintiff's second argument is that *Ferguson* is the one who should have sounded his horn (due to his knowledge that Nettles was not yielding the passing lane).[19] For the sake of brevity, the Court will set aside the fact that, generally, the Vehicle & Traffic Law expressly imposes on *Plaintiff* a duty to sound his horn; it does not expressly impose such a duty on *Ferguson*.[20] Rather, the Court will assume that, in certain circumstances, an overtaken vehicle could have a duty to a passing vehicle to sound his horn. More important is the fact that, here, there is no admissible record evidence from which a rational factfinder could conclude that Ferguson's sounding his horn would have been heard by Plaintiff (whose engine was running between 2944 and 4480 revolutions per minute before he applied his brakes),[21] or that, if it had even been heard by Plaintiff, it would have been heard in time for Plaintiff to take evasive action materially different than what he took, during the moment that elapsed between Ferguson first

---

[19]     Ferguson admitted he did not sound his horn in the moment between his first seeing Plaintiff and the occurring of the accident (or at any time). (Dkt. No. 54, Attach. 11, at 5-6 [attaching pages "33" and "34" of Ferguson's Depo. Tr.].)

[20]     *See, supra,* note 17 of this Decision and Order. The First Department has indicated that a driver's obligations under the Vehicle & Traffic Law and his obligations under the common law of negligence are "coextenstive." *See Herbst v. Balogh*, 184 N.Y.S.2d 718, 721 (N.Y. App. Div., 1st Dept. 1959) ("[D]efendant's obligation to sound the horn under the Traffic Regulations and her common-law obligation were coextensive.").

[21]     (Dkt. No. 54, Attach. 15, at 10 [attaching page "7" of NYSP Accident Reconstruction Report].)

seeing Plaintiff and Plaintiff colliding with Nettles.[22]  Such a conclusion is pure speculation.[23]

Plaintiff's third argument is that Ferguson should have pulled onto the shoulder upon seeing (or even before seeing) Plaintiff.  However, it is undisputed that Ferguson was driving a pick up truck towing 35-foot-long recreational vehicle down hill between 40 and 53 miles per hour.  To his right was a shoulder that he did not perceive to be wide enough to safely accommodate his vehicle (and to the right of the road appear to have been trees).  Granted, under the circumstances, Ferguson had a duty only to give way to the right.[24]  However, he had no duty to *unreasonably* give way to the right, e.g., giving way so far right that he could lose control of his vehicle, go off of the road into trees.[25]  To the contrary, he had a duty to maintain reasonable

_____

[22]     (Dkt. No. 54, Attach. 11, at 5-6 [attaching pages "33" and "34" of Ferguson's Depo. Tr., indicating Ferguson testified he had "no idea what Mr. Nettles would or would not have done [had Ferguson sounded his horn]"]).

[23]     *See Whitfield v. Tonse*, 709 N.Y.S.2d 746, 747 (N.Y. App. Div., 4th Dept. 2000) ("[T]he sole proximate cause of the accident was Toense's conduct in crossing the road into [Whitfield's] lane of travel . . . . [Toense's] *speculation* that [Whitfield] might have done something to avoid the accident is insufficient to raise an issue of fact concerning plaintiff's comparative fault . . . .") [emphasis added]; *Eisenback v. Rogers*, 551 N.Y.S.2d 385, 386 (N.Y. App. Div., 3d Dept. 1990) ("Plaintiff . . . has failed to demonstrate how Burr's alleged inattentiveness contributed in any way to the happening of the accident [during passing of vehicle] . . . . [P]laintiff's claim that the accident was partially caused by Burr's failure to yield to Rogers is nothing more than a bald, *speculative* conclusion, insufficient to defeat a motion for summary judgment.") [emphasis added].

[24]     *See* N.Y. VEH. & TRAF. LAW § 1122 McKinney (2012) ("The driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."); *see also Fratello v. Cnty. of Suffolk*, 947 N.Y.S.2d 530, 531 (N.Y. App. Div., 2d Dept. 2012) ("A violation of the Vehicle and Traffic Law constitutes negligence as a matter of law . . . .") (citations omitted).

[25]     *See Mark v. Fritsch*, 195 N.Y. 282, 284 (N.Y. 1909) ("If the position of the forward car in the center of the highway does not leave such room for passage, then it must upon request or equivalent notice, *if practicable and safe*, so turn aside as to leave such room for passage.") [emphasis added]; *Dunston v. Greenberger*, 200 N.Y.S. 426 (N.Y. App. Div., 3d Dept. 1923) ("When one vehicle overtakes another upon the highway, and the driver of the

control of his vehicle.[26]  Furthermore, he had a right (as against Plaintiff) to not have Plaintiff interfere with the operation of his vehicle.[27]  More important, there is no admissible record evidence from which a rational factfinder could conclude that, had Ferguson been able to pull further to the right without losing control of his vehicle, there would have been enough room for Plaintiff to avoid the accident.[28]  Again, such a conclusion is pure speculation.[29]

---

overtaking vehicle signals a desire to pass, it is the duty of the driver of the overtaken vehicle to turn to the right, so as to allow the overtaking vehicle a *reasonable* space in which to pass, or to warn by signal the impossibility of such passage.") [emphasis added]; *Tooker v. Fowler & Sellars Co.*, 132 N.Y.S. 213, 214 (N.Y. App. Div., 2d Dept. 1911) (" [The driver of the overtaken vehicle] was not bound to go over on the extreme right-hand side of the highway. . . . [T]o say that it was the duty of defendant's driver to anticipate this accident, and to avoid it by going farther over out of the way of the automobile, is to make the defendant liable as an insurer, rather than as one charged with the duty of exercising reasonable care.").

[26]     *See Luizzi*, 2009 WL 252076, at *8 (explaining that all drivers are under a duty "(1) to maintain a reasonably safe rate of speed, (2) to *have their automobiles under reasonable control*, (3) to keep a proper lookout, under the circumstances then existing, to see and be aware of what was in their view, and (4) to use reasonable care to avoid an accident.") [emphasis added].

[27]     *See* N.Y. VEH. & TRAF. LAW § 1124 (McKinney 2012) ("No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless . . . such overtaking and passing to be completely made *without interfering with the operation of* any vehicle approaching from the opposite direction or *any vehicle overtaken*.") [emphasis added]; *see also Fratello*, 947 N.Y.S.2d at 531 ("A violation of the Vehicle and Traffic Law constitutes negligence as a matter of law . . . .") (citations omitted).

[28]     Simply stated, Plaintiff has not established proximate causation.  *See Gass v. Woods*, No. 013319/10, 2012 WL 2752470, at *6 (N.Y. Sup. Ct., Nassau Cnty. 2012) ("The Plaintiff and the Defendant, Melissa Woods, also argue that because Christopher Armstrong parked his vehicle illegally, in violation of Vehicle and Traffic laws, he is liable under the theory of negligence per se. Negligence per se is not liability per se, however, because the protected class member still must establish that the statutory violation was the proximate cause of the occurrence . . . .").

[29]     *See, supra,* note 23 of this Decision and Order.

Plaintiff's fourth argument is that Ferguson should have braked. For the sake of brevity, the Court will set aside the fact that the Vehicle & Traffic Law expressly imposes on Ferguson only a duty not to increase his speed, not a duty to brake.[30] Rather, the Court will assume that, in certain circumstances, there exists a duty to brake, in order to make way for the passing vehicle.[31]

However, as threshold matter, the Court can perceive no duty for Ferguson to brake *before* Plaintiff pulled into the passing lane. This is because the relatively slow speed of Ferguson's vehicle appears to have been precisely what was causing Plaintiff to want to pass Ferguson. While it is conceivable that Ferguson may have had a duty to *Jakubowski* to slow down as Jakubowski was passing, that duty was not breached (in that Jakubowski successfully made his pass), and in any event a duty to Jakubowski is distinct from a duty to Plaintiff.

Furthermore, the Court can perceive no duty for Ferguson to brake before the front of Plaintiff's vehicle processed past parallel to the rear of the recreational vehicle being towed by Ferguson's pickup truck. This is because, had Ferguson braked during that time period, he

---

[30]     *See* N.Y. VEH. & TRAF. LAW § 1122 (McKinney 2012) ("The driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and *shall not increase the speed of his vehicle* until completely passed by the overtaking vehicle.") [emphasis added]; *Luizzi*, 2009 WL 252076, at *8 (explaining that all drivers are under a duty "(1) to *maintain* a reasonably safe rate of speed, (2) to have their automobiles under reasonable control, (3) to keep a proper lookout, under the circumstances then existing, to see and be aware of what was in their view, and (4) to use reasonable care to avoid an accident.") [emphasis added]. As stated above in note 20 of this Decision and Order, the First Department has indicated that a driver's obligations under the Vehicle & Traffic Law and his obligations under the common law of negligence are "coextenstive." *See Herbst*, 184 N.Y.S.2d at 721 ("[D]efendant's obligation to sound the horn under the Traffic Regulations and her common-law obligation were coextensive.").

[31]     *Cf. Mark*, 195 N.Y. at 285 ("[W]e do not think that it could be said as a matter of law that the plaintiff was under no obligation to *stop his car* for the purpose of allowing defendants to pass when it became apparent that there might be a collision, if such threatened collision was accidental and unexpected.") [emphasis added].

would have been preventing Plaintiff from pulling back into the eastbound lane, behind Ferguson and out of the way of Nettles.

Rather, the Court can perceive any such duty for Ferguson to brake as arising only if Plaintiff's vehicle processed past parallel to the rear of Ferguson's recreational vehicle. In his opposition memorandum of law, Plaintiff appears to dispute whether the front of Plaintiff's vehicle processed past parallel to the rear of Ferguson's recreational vehicle. However, in his Rule 7.1 Response, Plaintiff already admitted he was behind Ferguson's recreational vehicle when the collision occurred. (Dkt. No. 60, Attach. 2, at ¶ 46 [Plf.'s Rule 7.1 Response, admitting fact in question].) Even if the Court were inclined to look past Plaintiff's admission in his Rule 7.1 Response and revisit the issue of whether he was behind Ferguson's vehicle when the collision occurred (which the Court is not inclined), it would reject the notion that a genuine dispute of material fact exists as to whether Plaintiff was behind Ferguson's vehicle when the collision occurred.

In support of the conclusion that a genuine dispute of material fact exists as to whether Plaintiff was behind Ferguson's vehicle when the collision occurred, Plaintiff appears to assert (either explicitly or implicitly) various arguments. Initially, Plaintiff appears to argue that a genuine dispute of material fact is created based on the inaccuracy of Ferguson's testimony that the collision occurred in the inside westbound lane (given the undisputed fact that the collision occurred in the outside westbound lane). The problem is that the Court is not relying on Ferguson's testimony that the collision occurred in the inside westbound lane. Rather, the Court is relying on Ferguson's testimony only that the collision occurred *behind* his vehicle. Simply stated, Ferguson's inaccuracy as to the former fact (which was subsequently admitted by him) does not trigger the narrow exception to the rule against making credibility determinations (on

summary judgment motions) with regard to the latter fact (which is distinct from the former fact).

Next, Plaintiff appears to argue that a genuine dispute of material fact is created based on his theory that he was *in the passing lane* for five or more seconds (presumably implying he had sufficient time to move alongside Ferguson's vehicle). The problem is there is absolutely no admissible record evidence that he was in the passing lane for five or more seconds. There is only record evidence of his *speed* for the five seconds preceding the collision, not of his *location* during those five seconds.

Finally, Plaintiff appears to argue that a genuine dispute of material fact is created based on his sworn statement to the police in which he purportedly stated that he did not turn right immediately before the collision because there was a "wall or something" to his right.[32] For the sake of brevity, the Court will set aside the fact the statement does not state that "the wall or something" was Ferguson's vehicle (which Plaintiff does not even remember) as opposed to being the line of trees bordering the south of that portion of Route 73. The Court will also set aside the fact that the statement does not state that the vehicle was directly to his right as opposed to being ahead of him to his right.

More important is the fact that Plaintiff does not currently remember the events recounted in the statement. (Dkt. No. 54, Attach. 9, at 22-23 [attaching pages "71" and "72" of Plf.'s Depo. Tr.].) Granted, it is conceivable that, under such circumstances, such records might

---

[32]     (Dkt. No. 54, Attach. 18 [Plf.'s Sworn Statement to NYS Police, stating "I was in my lane when another vehicle that was traveling westbound was in my lane. This vehicle continued at me in my lane so I attempted to avoid it by driving to the left. I drove to the left because there was no room on my right, because there was a wall or something there. I do not remember any other vehicles on the road at the time other than the one that hit me. All I can really remember is this other car in my lane. I went to the left to avoid it and was struck by it. I then woke up while they were taking me out my vehicle."].)

be admissible at trial under Fed. R. Evid. 803(5) and Fed. R. Evid. 803(6).  However, here,

Plaintiff does not recall even making the statements contained in the sworn statement; nor does

he recall being interviewed by the investigator who prepared the statement; nor is he even certain

that it is his signature on the bottom of the statement.  (Dkt. No. 54, Attach. 9, at 22-23

[attaching pages "71" and "72" of Plf.'s Depo. Tr.].)  Furthermore, Plaintiff has not even

indicated an ability to adduce the favorable testimony of the investigator who prepared the

record or the person who witnessed the deponent's signature (more than six years ago).  As a

result, the Court has difficulty concluding that the evidence could be presented at trial in

admissible form.  *See* Fed. R. Civ. P. 56(c)(2).

      In any event, even if the Court were to find the existence of a genuine dispute of material

fact as to whether the front of Plaintiff's vehicle had moved past parallel to the rear of

Ferguson's recreational vehicle by the time of the collision (which it does not), the Court would

still not find the existence of admissible evidence in the record from which a rational factfinder

could conclude that any breach by Ferguson caused Plaintiff's injuries.  This is because, under

the circumstances, the duty to brake would not have arisen immediately upon the front of

Plaintiff's vehicle proceeding past parallel to the rear of Ferguson's recreational vehicle.  Rather,

the duty to brake would have arisen only after Ferguson had a reasonable opportunity to *learn*

that fact (e.g., either through hearing Plaintiff's horn or seeing Plaintiff in his rearview mirror).[33]

Here, the record is devoid of any evidence that, before he entered the passing lane, Plaintiff

sounded his horn.  Moreover, it is undisputed that (1) before Plaintiff entered the passing lane,

---

     [33]    *Cf. Mark*, 195 N.Y. at 285 ("[W]e do not think that it could be said as a matter of law that the plaintiff was under no obligation to stop his car for the purpose of allowing defendants to pass *when it became apparent* that there might be a collision, if such threatened collision was accidental and unexpected.") [emphasis added].

Ferguson was occupied with Mr. Jakubowski's passing of his vehicle, (2) immediately after Mr. Jakubowski's passing of his vehicle, Ferguson checked his rearview mirror and saw Plaintiff, and (3) a moment after Ferguson saw Plaintiff, Plaintiff collided with Nettles.

In other words, there is no admissible evidence in the record from which a rational factfinder could conclude that, after he first had a reasonable opportunity to learn of Plaintiff's intention to attempt to pass him, Ferguson would have had sufficient time to brake in order to give Plaintiff time to (1) decide to continue to apply his vehicle's accelerator rather than apply the brake, (2) travel past the length of Ferguson's Dodge Ram pickup truck and 35-foot recreational vehicle, and (3) safely reenter the eastbound lane ahead of Ferguson, before being struck by Nettles.[34] Again, such a conclusion is pure speculation.[35] It must be remembered that Ferguson had a duty of only *reasonable* care to Plaintiff, not of superhuman effort (and reflex skills), necessitated by Plaintiff's decision to turn into what could have been (and was) oncoming traffic at a speed of more than 25 miles per hour over the speed limit.

For all of these reasons, Ferguson's motion for summary judgment against Plaintiff is granted.

**B.      Whether Ferguson's Cross-Claim Against the Nettleses Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in the Nettleses' memoranda of law.  (*See generally* Dkt. No. 56, Attach. 14, at 15-16 [attaching pages "10" and "11" of Cross-Defs.' Memo. of Law]; Dkt. No. 68, at 2-3 [attaching pages "1" and "2" of Cross-Defs.' Reply Memo. of Law]; *see, also,* Part I.B.2. of this Decision and Order.).  The Court would add only two brief points.

---

[34]      (Dkt. No. 54, Attach. 11, at 10-12 [attaching pages "9" through "11" of Ferguson's Depo. Tr., testifying that the length of his Dodge Ram pickup truck and the recreational vehicle it was towing amounted to more than 35 feet].)

[35]      *See, supra,* note 23 of this Decision and Order.

First, in this District (as in many districts), when a non-movant fails to oppose a legal argument contained in a movant's memorandum of law, the movant's burden with regard to that legal argument has been lightened such that, in order to succeed with regard to that legal argument, he need only show the facial merit of the legal argument.[36] Here, the Nettleses have, at the very least, met its lightened burden with respect to their arguments.

Second, that the Nettleses' motion is granted for the additional reason that the success of Ferguson's cross-claim against the Nettleses depends on Ferguson's liability, and the Court has already found Furguson not liable. As a result, Ferguson cannot possibly succeed on his cross-claim.

For all of these reasons, the Nettleses' motion for summary judgment against Ferguson is granted.

**ACCORDINGLY,** it is

**ORDERED** that Ferguson's motion for summary judgment against Plaintiff (Dkt. No. 54) is **<u>GRANTED</u>**; and it is further

---

[36]     *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *see, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3] ); *cf. Niles v. Nelson*, 72 F. Supp.2d 13, 22 (N.D.N.Y. 1999) (McAvoy, C.J.) (holding that when a party does not respond to a portion of the opposing party's motion, they indicate that they consent to the granting of summary judgment with respect to that portion of the motion or have abandoned the claim); *Frink Am., Inc. v. Champion Road Machinery, Ltd.*, 48 F. Supp.2d 198, 209 (N.D.N.Y.1999) (McAvoy, C.J.) ("Plaintiff does not address these claims in his opposition papers, leading the Court to conclude that it has abandoned them.") (collecting cases); *see also Di Giovanna v. Beth Isr. Med. Ctr.*, 08-CV-2750, 2009 WL 2870880, at *10 n. 108 (S.D.N.Y. Sept. 8, 2009) (citing cases for proposition that plaintiff's failure to respond to argument made in summary judgment motion as to why certain claim should be dismissed constitutes abandonment of claim).

**ORDERED** that the Nettleses' motion for summary judgment against Ferguson (Dkt.

No. 56) is **<u>GRANTED</u>**; and it is further

**ORDERED** that both motions are **<u>DENIED</u> as moot** to the extent they request other

relief, which has already been provided by the Court's Decision and Order of August 30, 2011;

and it is further

**ORDERED** that this action is **<u>DISMISSED</u>** in its entirety.

Dated: December 10, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge